```
         IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF OHIO
                   EASTERN DIVISION
```

Educational Impact, Inc.,           :

    Plaintiff,                  :

  v.                                :Case No. 2:16-cv-941

                                             :CHIEF JUDGE EDMUND A. SARGUS, JR.
Terrance M. Scott,                   Magistrate Judge Kemp

    Defendant.                  :

## ORDER

This matter is now before the Court on a motion to change venue by defendant Terrance M. Scott ("Dr. Scott") pursuant to 28 U.S.C. §1404. The motion has been fully briefed and is now ripe for decision. For the following reasons, the motion to transfer venue (Doc. 9) will be granted and this case will be transferred to the United States District Court for the Western District of Kentucky at Louisville.

### I. Background

This case was filed on September 30, 2016 by plaintiff Education Impact, Inc. ("EI") seeking a judgment against Dr. Scott declaring that his threatened Lanham Act and related state law claims are without merit. By way of background, Dr. Scott is "one of the founders of the positive behavior interventions and support movements ("PBIS")." Doc. 1, Ex. A. He provides training to school districts around the United States and internationally to assist in the development of policies and procedures for dealing with challenging behaviors in schools. Id. Dr. Scott resides in Louisville, Kentucky, and is currently the Director of the University of Louisville's Center for Instructional and Behavioral Research in Schools. (Doc. 1 ¶3; Doc. 9, Ex. 1). EI is a Pennsylvania corporation with its principal place of business in Lansdale, Pennsylvania. Doc. 1, ¶2. EI is in the business of

developing, creating, marking, and selling online professional development programs and services for teacher evaluation and training.  Id. ¶7.

On September 13, 2004, Dr. Scott attended a seminar in Columbus, Ohio called "Sig PBS and Dibbles Integrated Training." Id. ¶12. On or about that same date, Dr. Scott entered into a contract with the Ohio Department of Education ("Ohio DOE") to provide a professional development presentation to a group of Ohio teachers.  Id. ¶13.  In relation to the Ohio DOE contract, the Ohio DOE requested that EI film Dr. Scott presenting at the seminar. Id. ¶14.  Prior to the filming of the presentation, Dr. Scott was presented with a "Talent Release," which he signed, giving EI permission to use or publish images in which Dr. Scott and his training might be included. Id. ¶15; Ex. 2. The Talent Release does not contain a clause indicating governing law or forum selection. Id.

Years later, on June 25, 2010, Dr. Scott emailed EI expressing his displeasure with the use of his name and material on EI's website. Id. There was some email correspondence between the parties regarding this dispute, during which EI provided Dr. Scott with a copy of the Talent Release. ¶16, Ex. C. Approximately six years later, in July of 2016, there was more email correspondence in which Dr. Scott again expressed his displeasure to EI about its use of his materials.  Id. ¶ 17, Ex. C.  On August 23, 2016, Dr. Scott, through counsel, sent a letter to EI demanding that it cease and desist using his name and likeness in connection with its products and services, and threatening legal action if it did not do so. Id. ¶19; Ex. A.  EI filed this declaratory judgment action in response. Doc. 1.

On the merits, Dr. Scott argues that EI did not have permission to use of his image and materials, and claims that he understood the Talent Release to permit the Ohio DOE to use his

2

materials only for non-public or in-house purposes. Doc. 9, Ex. 1 ("Scott Aff."), ¶8. He asserts that he recently discovered that EI sold materials which included an online PBIS course taught by Dr. Scott to the Jefferson County, Kentucky Public Schools ("JCPS") (Louisville is located in Jefferson County). Id. ¶¶ 9-10. After looking further into the EI website, Dr. Scott learned that EI had a section containing his image and a biographical page that implied that Dr. Scott was one of EI's experts. It also contains a large portion of his 2004 video recorded presentation. Id. ¶¶ 10-11. On November 8, 2016, together with this motion for transfer of venue, Dr. Scott filed his answer and brought counterclaims against EI for false endorsement under the Lanham Act, violation of his statutory right of publicity, misappropriation of name and likeness for commercial gain, unjust enrichment, and for a judgment declaring that the Talent Release is unenforceable. Doc. 10.

## II. Legal Standard

The general principles relating to a transfer of venue under 28 U.S.C. §1404(a) have been extensively discussed in various Court of Appeals and District Court decisions within the Sixth Circuit. The purposes of transferring a case from one federal district to another, where venue is proper in each, are to permit access to proof with greater ease, to allow witnesses to attend a trial, to enhance enforceability of any judgment rendered, and otherwise to permit a transfer when to do so would further the goal of a fair and efficient trial and remove any obstacles thereto. Holiday Rambler Corp. v. American Motors Corp., 254 F.Supp. 137 (W.D.Mich. 1966). Providing for a change of venue allows the Court to prevent unnecessary waste of time, energy and money and to protect witnesses and the public against unnecessary inconvenience and expense. Rowe v. Chrysler Corp., 520 F.Supp. 15 (E.D.Mich. 1981).

"However, when balancing those various factors, the Court does not start with the assumption that the case should proceed in whichever forum is slightly more advantageous to the parties or the witnesses. Rather, it has long been held that the plaintiff's choice of a forum is entitled to considerable weight, and, consequently, the party moving for a change of venue must demonstrate that the interests served by 28 U.S.C. §1404(a) clearly favor a change of venue." Lassak v. American Defense Systems, Inc., 2007 WL 1469402, *2 (S.D. Ohio May 18, 2007), quoting Sun Oil Co. v. Lederle, 199 F.2d 423 (6th Cir. 1952); International Union of Electrical Radio and Machine Workers v. United Electrical, Radio and Machine Workers of America, 192 F.2d 847 (6th Cir. 1951); Nicol v. Koscinski, 188 F.2d 537, 537 (6th Cir. 1951); Central Investment Corp. v. Mutual Leasing Associates, Inc., 523 F.Supp. 74 (S.D. Ohio 1981). Of course, although "a plaintiff's choice of forum should be given weight when deciding whether to grant a motion to change venue, this factor is not dispositive." Lewis v. ACB Business Services, Inc., 135 F.3d 389, 413 (6th Cir. 1998). Nevertheless, unless it can be said that, balancing all appropriate factors, plaintiff's choice of a forum is "clearly... inconvenient," a change of venue should not be ordered. Lassak, supra, quoting Texas Eastern Transmission Corp. v. Marine Office-Appleton & Cox Corp., 579 F.2d 561, 568 (10th Cir. 1978).

Where more than one venue is available in which to try a case, some inconvenience to one or more parties will exist no matter which forum is chosen. Consequently, if a change of venue serves merely to shift the inconvenience from the plaintiff to the defendant, a change of venue is improper. Raymond E. Danto Associates, Inc. v. Arthur D. Little, Inc., 316 F.Supp. 1350 (E.D.Mich. 1970). Consistent with that principle, a generalized

assertion by a defendant that witnesses reside in, and documents are located in, the proposed transferee district, is generally insufficient to support a change of venue. Hartford Accident & Indemnity Co. v. Dalgarno Transportation, Inc., 618 F.Supp 1450 (S.D.Miss. 1985). Rather, the defendant must show a specific hardship involved in transporting documents to the plaintiff's chosen district, see AMF, Inc. v. Computer Automation, Inc., 532 F.Supp. 1335 (S.D.Ohio 1982). The Court may also take into account other factors, including which party is more easily able to bear the hardship involved in litigating in a distant forum, where the conduct underlying the plaintiff's claims occurred, the comparative docket congestion in the districts under consideration, and the plaintiff's connection, if any, with the proposed transferee forum. See Nicol v. Koscinski, supra; Artisan Development v. Mountain States Development Corp., 402 F.Supp. 1312 (S.D. Ohio 1975). The instant motion for a change of venue will be decided with reference to these principles.

### III. Discussion

Dr. Scott urges the Court to transfer this case to the United States District Court for the Western District of Kentucky, Louisville Division. The threshold consideration in analyzing a motion to transfer is to determine whether the action could have been brought in the proposed new venue. However, that is not an issue here. The case could have been brought in the Western District of Kentucky because that is where the defendant resides. 28 U.S.C. §1404(a). Dr. Scott argues that this case has very little connection to Ohio and that the private and public interests weigh in favor of this litigation being conducted in Kentucky. EI argues that Dr. Scott has not met his burden to show that transfer is appropriate and that the public and private interests weigh in favor of venue in Ohio.

In considering the private interests of the parties with respect to venue, the Court should consider the plaintiff's choice of forum, ease of access to relevant evidence, convenience of parties and witnesses, the availability of process to compel attendance of unwilling witnesses, and practical problems impacting the efficiency of the litigation. See, e.g. Moses v. Business Card Express, Inc., 929 F.2d 1131 (6th Cir. 1991). As noted above, the plaintiff's choice of forum is entitled to some weight. However, when the plaintiff's choice is not its home forum, the presumption in the plaintiff's favor "applies with less force," because the assumption that the chosen forum is appropriate is less reasonable. Sinochem Intern. Co. Ltd. V. Malaysia Intern. Shipping Corp., 549 U.S. 422, 430 (2007), citing Piper Aircraft Co. v. Reyo, 454 U.S. 235, 255-56 (1981). EI is not an Ohio resident and has never maintained an office in the state of Ohio. EI's home office is in Pennsylvania and it appears to engage in its business activities throughout a wide physical geographical region as well as online. The main connection to Ohio in this case is that Ohio appears to be where the parties entered into the initial transaction involving the filming of Dr. Scott's presentation and the signing of the Talent Release.

The parties each argue that the private interests favor their choice of venue, primarily due to availability of witnesses. Dr. Scott argues that no party to the case resides in Ohio, that the transaction that prompted Dr. Scott's cease and desist letter (the purported sale of materials featuring his presentation to JCPS) occurred in Louisville, and that individuals involved in this aspect of his counterclaim are located in Louisville. He also asserts that it would be more burdensome on him as a private individual to travel to Columbus for proceedings than it would be for EI, as a corporation, to

6

travel to Louisville. EI responds that the case arises out of the parties' mutual relationships with the Ohio DOE, and that there are likely to be Ohio-based witnesses related to the Ohio DOE contract and the Talent Release. EI further asserts that because Dr. Scott travels extensively for his profession, his claim that he would be unduly burdened by travel from Louisville to Columbus is unconvincing.

Although Ohio is slightly closer to EI headquarters than is Louisville, EI's witnesses will be required to travel whether the litigation is conducted in either forum. Access to documentary or other non-witness evidence is not a significant issue here, given that most, if not all, of it is available online or in a digital format. Considering all these issues, including the relative inconvenience of the Ohio forum to both parties, and in light of the counterclaims brought by Dr. Scott based on the alleged transaction in Louisville, the private interest factors weigh in favor of a Kentucky venue.

Public interests to consider in determining whether a change of venue is appropriate include the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases. Jumara v. State Farm Ins. Co., 55 F.3d 873, 879-80 (3rd Cir. 1995); see also Slate Rock Const. Co. Ltd. v. Admiral Ins. Co., 2011 WL 3841691, *6 (S.D. Ohio Aug.30, 2011). Dr. Scott asserts that the local interest in deciding local controversies at home strongly favors a Kentucky venue. He argues that Kentucky courts have a strong interest in assessing whether the Talent Release, a 12-year-old document purporting to give a wide range of rights over

7

Dr. Scott's intellectual property, is enforceable against a Kentucky resident. Doc. 9 at 10. Conversely, EI asserts that Ohio has a strong interest in enforcing an agreement signed in Ohio between EI and Dr. Scott, who is (or was) a training specialist working with the Ohio DOE.

EI argues that Ohio is the better venue because the case arises out of both parties' relationships with the Ohio DOE. In addition, EI seeks judgment in its favor on the Lanham Act claim based on the equitable doctrine of laches. Because the Lanham Act does not include its own statute of limitations, the Ohio two-year statute of limitations will be relevant to the question of whether there is a "presumption of laches" due to Dr. Scott's delay in pursuing EI for allegedly misusing his information. Tandy Corp. V. Malone & Hyde, Inc., 769 F.2d 362, 365 (6th Cir. 1985); see also Reed v. United Transp. Union, 488 U.S. 319, 334 (1989) (noting the "well established rule that statutes of limitations for federal causes of action not supplied with their own limitations period will be borrowed from state law"). EI asserts that Ohio substantive law will be applied to the state law claims even if the case is transferred because the transferee court must apply the original state's choice of law. Doc. 15 at 7, citing Van Dusen v. Barrack, 376 U.S. 612, 639 (1964). The Court also notes that Dr. Scott has alleged counterclaims against EI based on the Lanham Act as well as Kentucky statutes and common law, and that some of the causes of action (i.e. the alleged use and sale of Dr. Scott's materials to JCPS) arose in Kentucky. Nonetheless, what substantive state law is ultimately applied to the claims need not be determined here. Dr. Scott correctly points out that the judges in the Western District of Kentucky have regularly applied Ohio law to cases in that district. See, e.g. Westlake Vinyls, Inc. V. Goodrich Corp., 518 F.Supp.2d 918) (W.D. Ky. 2007); Ireland v. King, 2009 WL 5126597

(W.D. Ky. Dec. 21, 2009); Herzig v. Oncology/Hematology Care, Inc., 2001 WL 1775378 (W.D. Ky. May 24, 2001). The Court is not persuaded that the judges in the Western District of Kentucky would be any less able to apply Ohio law if necessary than the judges in this Court.

Looking at the practical issue of relative congestion of docket, Dr. Scott supplies the 2015 Judicial Business Report for 2015, which indicates the median time in civil cases from filing to disposition in the Western District of Kentucky is eight months, as compared to nine months in the Southern District of Ohio. Id. at Ex. 2. That difference here is not dramatic, but it weighs slightly in favor of transfer. Courts have broad discretion in determining transfer of venue and "may consider any factor that may make any eventual trial 'easy, expeditious and inexpensive.'" Helder v. Hitachi Power Tools, USA Ltd., 764 F.Supp. 93, 96 (E.D. Mich. 1991) (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)).

This case does not involve a situation where a large number of documents or an extraordinary number of witnesses are located at great distances from the EI's chosen forum. EI has no particular connection to Ohio, and the parties are Pennsylvania and Kentucky residents, respectively. It appears that the only factors that would favor retention of this case in Ohio are that, at some point, Dr. Scott contracted with the Ohio DOE, the Talent Release was signed in Ohio, and the video training which comprises some of the disputed intellectual property was recorded in Ohio.

Given the tenuous relationship of this case to Ohio and the fact that there are identifiable and specific interests which favor a transfer to Kentucky, the Court concludes that this is an appropriate case for transfer under § 1404(a). See generally Bell v. K-Mart Corp., 848 F.Supp. 996 (N.D.Ga. 1994).

## IV. Conclusion

For the reasons set forth above, the motion to transfer venue pursuant to 28 U.S.C. §1404(a) (Doc. 9) is granted and this case shall be transferred to the United States District Court for the Western District of Kentucky at Louisville upon the expiration of the 14-day period for filing a motion for reconsideration or, if such a motion is filed, upon the District Judge's ruling, should that ruling deny reconsideration.

## V. Motion for Reconsideration

Any party may, within fourteen days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge. 28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 91-3, pt. I., F., 5. The motion must specifically designate the order or part in question and the basis for any objection. Responses to objections are due fourteen days after objections are filed and replies by the objecting party are due seven days thereafter. The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge. S.D. Ohio L.R. 72.4.

/s/ Terence P. Kemp
United States Magistrate Judge