UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE


EDUCATIONAL IMPACT, INC.                                          PLAINTIFF


v.                                          CIVIL ACTION NO. 3:17-CV-00351-CRS


TERRANCE M. SCOTT                                                DEFENDANT


## MEMORANDUM OPINION

This matter is before the Court on motion of Plaintiff Educational Impact, Inc.

("Educational Impact"). Educational Impact apparently moves for a Federal Rules of Civil

Procedure 12(b)(6) dismissal of Defendant Terrance M. Scott's Lanham Act Amended

Counterclaim under the theory of laches. For the following reasons, Plaintiff's Motion to

Dismiss Defendant's Lanham Act Amended Counterclaim will be **DENIED**.

### I.    BACKGROUND

Defendant Terrance M. Scott ("Dr. Scott") is the Director of the University of

Louisville's Center for Instructional and Behavioral Research in Schools, specializing in

behavioral disorders. (Am. Countercl., DN 20, ¶ 2.) Dr. Scott alleges that he is a founder of a

technique for addressing challenging student conduct called "the positive behavior interventions

and support movement" ("PBIS"). (*Id*.) According to Dr. Scott, he has provided training to

school districts around the country to teach his technique. (*Id*.)

Pursuant to an alleged contract with the Ohio Department of Education ("ODE"), Dr.

Scott presented at a seminar in Columbus, Ohio on September 13, 2004. (Am. Countercl., DN

20, ¶ 8.) Dr. Scott agreed to allow the ODE to film his presentation, but claims that this

permission was conditioned on the ODE's agreement that the film would be used only for in-house, non-commercial instruction. (*Id.*, ¶ 9.) On the day of his presentation, Dr. Scott signed a "Talent Release" ("release") granting Plaintiff Educational Impact "the right and permission to copyright, in their own name or otherwise, use or publish the images in which [Dr. Scott] may be included." (Compl., DN 1-2, Ex. 2.)[1]

Educational Impact is a Pennsylvania corporation that sells educational development materials to school districts for profit. (Am. Countercl., DN 20, ¶ 3.) Educational Impact claims to develop, create, market, and sell "online professional development programs and services that include programs and services specifically for teacher evaluation and training." (Compl., DN 1, ¶ 7.)

Dr. Scott alleges that Educational Impact relied on "deceptive solicitation" to procure his signature on the release. (Am. Countercl., DN 20, ¶ 14.) He claims that an ODE employee ran up to him seconds before he began his presentation and asked him to sign this release. (*Id.*, ¶ 10.) He further claims that he believed the release was a standard video release agreement between himself and the ODE. (*Id.*, ¶ 12.) Dr. Scott maintains that he remained "completely unaware" for many years after the seminar that Educational Impact had filmed his presentation for their commercial use. (*Id.*)

Dr. Scott claims to have discovered Educational Impact's use of his seminar in 2010. (Am. Countercl., DN 20, ¶¶ 19-21.) Dr. Scott was allegedly contacted by a school district employee of Loudoun County, Virginia, who stated that an Educational Impact employee had informed her that Dr. Scott was working with Educational Impact. (*Id.*, ¶¶ 19-20.) Dr. Scott claims that soon after his conversation with the Loudoun County school district employee, he

---

[1] The relationship between the ODE and Educational Impact is unclear.

visited Educational Impact's website and discovered a clip of his filmed 2004 seminar and his corresponding PowerPoint slides. (*Id.*, ¶ 22.)

On June 25, 2010, Dr. Scott emailed Scott Elias ("Elias"), an Educational Impact salesperson, about his conversation with the Loudoun employee and subsequent discovery of his video and PowerPoint slides on Educational Impact's website. (Am. Countercl., DN 20, ¶ 25.) He further stated, "I'm not sure what all your program consists of or how you came by the videos but I do not lend my name, materials, or other likenesses to for-profit ventures." (*Id.*) Elias responded by email on June 28, 2010 with an attachment of Dr. Scott's signed, 2004 release, stating that "[t]he language in the release is straightforward and provides EI with the unlimited rights to use the video in our online programs or elsewhere." (*Id*., ¶ 26.)

Upon receipt of Elias' email response, Dr. Scott purportedly called a contact at the ODE to explain his situation. (Am. Countercl., DN 20, ¶ 32.) Dr. Scott claims that this contact assured him that the ODE had not granted Educational Impact permission to use Dr. Scott's lecture for their own purposes. (Id., ¶ 33.) Further, Dr. Scott asserts that the ODE would "ensure that [Educational Impact] removed Dr. Scott's image and presentation from its website." (Id., ¶ 34.)

By Dr. Scott's assertions, he believed that the matter was resolved in 2010 with the aid of the ODE. He also alleges that he had no knowledge that Educational Impact had any specific intent to sell his video, image, or property for profit. (Am. Countercl., DN 20, ¶ 23.) Rather, he claims that he only knew that Educational Impact was representing a false affiliation. (Id., ¶ 24.) Then, in 2016, a representative of the Jefferson County Public Schools ("JCPS") in Kentucky allegedly contacted Dr. Scott and asked him to review a training program they had purchased from Educational Impact. (Id., ¶ 36.) Upon review, Dr. Scott maintains he discovered "several

lengthy excerpts" of one of his PBIS presentations. (Id., ¶ 38.)   Dr. Scott alleges that he then reviewed Educational Impact's website and found his name as an "affiliated expert." (Id., ¶ 39.)

In July of 2017, Dr. Scott allegedly emailed Educational Impact concerning his most recent discovery and subsequently hired an attorney, who then sent a formal cease-and-desist letter to Educational Impact. (Id., ¶¶ 45-46.)  In response, Educational Impact filed a Complaint for Declaratory Judgment for one count of the lawful use of Dr. Scott's identity and material for Educational Impact's commercial use. (Compl., DN 1.)  Subsequently, Dr. Scott brought his Amended Counterclaim for violations of the Lanham Act, statutory right of publicity under Kentucky law, common law misappropriation of name and likeness for commercial gain, declaratory judgment, unjust enrichment, and punitive damages. (Am. Countercl., DN 20.)

Plaintiff Educational Impact now seeks dismissal of Count I of Defendant Dr. Scott's Amended Counterclaim, the alleged violation of the Lanham Act, under the theory of laches. (Pl.'s Mot. To Dismiss, DN 23.)

## II.    STANDARD

The standard to survive a motion to dismiss a claim under the Federal Rules of Civil Procedure is well-established: "to survive a motion to dismiss, a complaint must contain factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell At. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Therefore, in construing Plaintiff's Motion to Dismiss Defendant's Lanham Act Amended Counterclaim, we will assume defendant Dr. Scott's factual allegations as true without accepting mere legal conclusions. *Id.* at 679. The burden of proof rests on Educational Impact to establish that Dr. Scott's Lanham Act counterclaim is barred by laches.

## III.    DISCUSSION

Count I of Defendant's Amended Counterclaim alleges False Endorsement in violation of §

43(a) of the Lanham Act, which states, in relevant part:

> (1)  Any person who, on or in connection with any goods or services, or any
> container for goods, uses in commerce any word, term, name, symbol, or device,
> or any combination thereof, or any false designation of origin, false or misleading
> description of fact, or false or misleading representation of fact, which—
>
> (A)  is likely to cause confusion, or to cause mistake, or to deceive as to
> the affiliation, connection, or association of such person with another person, or
> as to the origin, sponsorship, or approval of his or her goods, services, or
> commercial activities by another person, or
>
> (B)  in commercial advertising or promotion, misrepresents the nature,
> characteristics, qualities, or geographic origin of his or her or another person's
> goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is
> likely to be damaged by such act.

15 U.S.C. § 1125(a).

Because the Lanham Act does not contain a statute of limitations, "determining whether a

Lanham Act claim is time-barred depends upon the defendant's ability to show that the claim is

barred by laches." *Kehoe Component Sales, Inc. v. Best Lighting Prods.*, 796 F.3d 576, 584 (6th

Cir. 2015).  Generally, "[l]aches is the negligent and unintentional failure to protect one's

rights." *Nartron Corp. v. STMicroelectronics, Inc.*, 305 F.3d 397, 408 (6th Cir. 2002).  The party

asserting laches has the burden of showing: (1) lack of diligence by the party against whom the

defense is asserted, and (2) prejudice to the party asserting it.  *Herman Miller, Inc. v. Palazzetti

Imports and Exports, Inc.*, 270 F. 3d 298, 321 (6th Cir. 2001).

There is a strong presumption that a delay in bringing a Lanham Act claim "is not

unreasonable as long as the analogous statute of limitations has not lapsed."  *Id.* (citing *Tandy

Corp. v. Malone & Hyde, Inc.*, 769 F. 2d 362, 365-66 (6th Cir. 1985)).  In order to determine the

analogous statute of limitations, we must first decide which state's law applies. "The procedural law of the forum state applies, including its statute of limitations." *Electric Power Bd. Of Chattanooga v. Monsanto Co.*, 879 F.2d 1368, 1375 (6th Cir. 1989). *See also Logan Farms v. HBH, Inc. DE*, 282 F. Supp.2d 776, 790 (S.D. Ohio 2003) ("The general rule is that where Congress has not provided a statute of limitations, the trial court should borrow the statute of limitations from the forum state"). The forum state in this case is Ohio.[2] In Ohio, Lanham Act claims are analogous to claims for bodily injury or damage to personal property under Ohio Rev. Code § 2305.107, which supplies a two-year statute of limitations. *Logan Farms*, 282 F. Supp.2d at 790. Therefore, any Lanham Act claim filed within two years of the claim's accrual is a presumptively reasonable delay. Likewise, any claim filed more than two years after the time of accrual is presumptively unreasonable and prejudicial.

Under the doctrine of laches, the period of delay in pursuing a Lanham Act claim begins to run when the claimant has "actual or constructive knowledge of the alleged infringing activity." *Kehoe*, 796 F.3d at 584. The parties dispute the point at which this notice occurred, but both arguments focus on three distinct instances: in 2004 at the seminar in which Dr. Scott signed Educational Impact's release; in 2010 when Dr. Scott alleges he first discovered Educational Impact was using his video and materials; and in 2016 when this lawsuit was filed.

Neither party disputes that Dr. Scott had actual notice of his alleged Lanham Act violation in 2016; further, this lawsuit was timely filed under the argument that notice did not occur until 2016. Consequently a discussion of laches as it applies to the 2016 notice is unnecessary.

---

[2] The Complaint was filed in the Southern District of Ohio. (DN 1.) The case was transferred to the present court for convenience pursuant to 28 U.S.C. §1404(a). (DN 29.) This transfer has no impact on the applicable law.

Therefore, our discussion begins with the events that took place in 2004. The court finds that Plaintiff Educational Impact did not meet its burden of showing that Dr. Scott had notice of the alleged Lanham Act violation in 2004. Dr. Scott's Counterclaim asserts that the release was obtained through deception, that he had no knowledge of Educational Impact or their involvement in filming his seminar in 2004, and that an ODE employee "ran up to him seconds before" he gave his presentation, requesting Dr. Scott sign what he believed was a standard release between him and the ODE and no other parties. On this Motion, the court must accept these facts as true. Further, Educational Impact has offered no legal precedent, or any particular argument beyond generalized assertions, that despite these facts, Defendant still had actual or constructive notice. Therefore, we conclude that Dr. Scott has presented sufficient facts to rebut the assertion that he was on notice of Educational Impact's alleged wrongful conduct in 2004.

The next significant event in which the parties dispute notice, and the event which sparked the parties' most vigorous briefing, purportedly occurred in 2010. Once again, the burden rests on Educational Impact to establish that Dr. Scott had actual or constructive notice of the alleged Lanham Act violation in 2010, which would begin the accrual of time for delay in bringing the claim.

The court finds that Dr. Scott had actual notice of his alleged Lanham Act claim in 2010. Dr. Scott admits that he discovered Educational Impact's use of his image and clips from his 2004 seminar on their website in 2010. Dr. Scott further admits that he soon after contacted an Educational Impact representative by email concerning his discovery, wherein he recognized that Educational Impact is a for-profit company. Most significantly, this representative provided Dr. Scott with a copy of the signed, 2004 release that contained language granting Educational Impact "the right and permission to copyright, in their own name or otherwise, use or publish the

images" of Dr. Scott. The representative's email to Dr. Scott clearly evidenced Educational Impact's belief in the validity of the contract and of their intent to continue using Dr. Scott's image and seminar. These undisputed facts establish actual notice of the alleged Lanham Act violations.

Further, we are unmoved by Dr. Scott's argument that though he was aware of some alleged violations, he was not aware of all the facts necessary to support a Lanham Act claim in 2010. Specifically, Dr. Scott claims he was unaware that Educational Impact was actively making a profit on his filmed seminar in 2010. This argument is inconsequential to our finding. Dr. Scott's False Endorsement claim under the Lanham Act does not require a showing that Educational Impact directly profited from the sale of the 2004 presentation. Rather, the crux of the alleged Lanham Act violation is the affiliation, approval, or sponsorship itself, which could cause damage to a person's property rights and professional reputation, and of which Dr. Scott admits he had knowledge in 2010. That the scope or the extent of the alleged violation changed or escalated in the following six years does not negate our finding that Dr. Scott knew sufficient facts in 2010 to pursue a Lanham Act claim at that time.

Even if, *arguendo*, the sale of portions of Dr. Scott's seminar was an essential element of his claim, Dr. Scott was on notice in 2010 that Educational Impact was a for-profit company, that they possessed a release signed by Dr. Scott, and that they intended to continue to use his likeness and video. The court finds these facts sufficient to show that Dr. Scott at least should have known that Educational Impact could sell, if they had not already, portions of his video for profit. Indeed, "the law is well settled that, where the question of laches is in issue, the plaintiff is chargeable with such knowledge as he might have obtained upon inquiry." *Advanced*

*Cardiovascular Systems, Inc. v. Scimed Life Systems*, Inc., 988 F.2d 1157, 1162 (Fed. Cir. 1993) (citing *Johnston v. Standard Mining Co.*, 148 U.S. 360, 370 (1893)).

Because Dr. Scott had actual knowledge of the potential Lanham Act violation in 2010, the period of delay in bringing suit began running at that time.  Further, because the analogous statute of limitations is two years under Ohio law, any presumption of reasonable delay ended in 2012; the presumption now is that Dr. Scott's delay was both unreasonable and prejudicial.

Therefore, the court must next look to whether Dr. Scott has overcome this presumption. The Federal Circuit case *A.C. Aukerman Co. v. R.L Chaides Constr. Co.* is particularly instructive on the application and effect of the presumption that occurs after the analogous statute of limitations has passed.  *A.C. Aukerman*, 960 F.2d 1020 (Fed. Cir. 1992).  Generally, "a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof." *Id*. at 1037.  This is what is often called the "bursting bubble theory" of presumptions; "a presumption is not merely rebuttable but completely vanishes upon the introduction of evidence sufficient to support a finding of the nonexistence of the presumed fact."  *Id*.  Once a party against whom the defense of laches is raised presents a "minimum quantum of evidence" to put the "existence of a presumed fact into genuine dispute," the presumption disappears and the accused infringer is left to satisfy its ultimate burden of persuasion.  *Id*. at 1037-38.  A party may overcome the presumption by offering evidence that either the delay was reasonable or that the delay was not prejudicial.  *Id.* at 1038.

Whether a party has presented sufficient evidence to "burst the bubble" of the presumption, and whether the party raising the affirmative defense has satisfied its ultimate burden of persuasion, is, naturally, an inherently fact-specific analysis.  Therefore, courts have

often recognized that the laches determination usually requires "factual development beyond the content of the complaint." *Advanced Cardiovascular*, 988 F.2d at 1161. *See also Lindsey v. U.S. Bank National Association*, No. 4:15-CV-00119, 2016 WL 2654089, at *3 (W.D. Ky. May 9, 2016) ("[A] complaint seldom will disclose undisputed facts clearly establishing the defense of laches and a motion to dismiss generally is not a useful vehicle for raising the issue.") (citing *Am. Nat. Prop. & Cas. Co. v. Tosh*, No. 5:12-CV-00051, 2013 WL 1311399, at*3 (W.D. Ky. Mar. 27, 2013)). *See also Williamson v. Recovery Ltd. Partnership*, No. C2-06-292, 2009 WL 3172648, at *4 (S.D. Ohio Sep. 30, 2009) (finding that, "the equitable doctrine of laches [is] inherently fact specific and thus not amenable to dismissal at the pleading stage."). While the face of the Complaint, in some cases, may clearly show unreasonable delay and prejudice such that additional evidence would be inconsequential, we find that the current case does not lend itself to such a straight-forward determination. We agree that the fact-specific nature of laches "at this stage of the proceedings can not be decided against the complainant based solely on presumptions." *Advanced Cardiovascular*, 988 F.2d at 1161. Like parties before it, Educational Impact must wait for the summary judgment stage.

## IV.    CONCLUSION

Construing the facts in Defendant Dr. Scott's Amended Counterclaim as true, we find that Dr. Scott had actual notice of the alleged Lanham Act violation in 2010. Further, we conclude as a matter of law that the analogous statute of limitations is the two year period under Ohio Rev. Code § 2305.107. Taking these findings together, it follows that Dr. Scott's six-year delay in commencing litigation is presumptively unreasonable and prejudicial. Dr. Scott, however, must be afforded the opportunity to overcome the presumption, if he can. With only the allegations in the Amended Counterclaim to support such an effort, there is a dearth of facts upon which to

base the proposition that his delay was potentially not unreasonable, or that the Counter

Defendant suffered no real prejudice from the delay.  Similarly, the Amended Counterclaim,

standing alone, does not reveal sufficient facts to enable the court to conclude that Educational

Impact has met its ultimate burden of proof to show that the delay was unreasonable and that it

suffered prejudice from the delay.  The issue not being fully cognizable at this stage, the motion

to dismiss must be denied.

    The court will enter an order in accordance with this opinion.

September 21, 2017

**Charles R. Simpson III, Senior Judge**
**United States District Court**